# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

UNITED STATES OF AMERICA,

                Plaintiff,          :        Case No. 1:15-cr-026 (3)


                                     District Judge Susan J. Dlott
-  vs  -                        Magistrate Judge Michael R. Merz

AARON ANTHONY MURRAY,


                Defendant.        :

---

# REPORT AND RECOMMENDATIONS

---

This criminal case is before the Court on Defendant Murray's Motion to Vacate Sentence under 28 U.S.C. § 2255 (ECF No. 102). The Motion has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(ECF No. 103).

The Motion is before the Court for initial review pursuant to Rule 4(b) of the Rules Governing § 2255 Proceedings which provides:

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States to file an answer, motion, or other response within a fixed time, or take other action the judge may order.

1

**Procedural History**

On April 23, 2015, the United States Attorney for this District filed an Information charging Defendant Murray in four counts (1) interference with commerce by robbery in violation of the Hobbs Act on August 17, 2014; (2) using a firearm during and in relation to the robbery in Count 1 in violation of 18 U.S.C. § 924(c)(1)(A)(ii); armed bank robbery on October 15, 2014, in violation of 18 U.S.C. § 2113(a); and using a firearm during and in relation to the armed bank robbery, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 924(c)(1)(C)(i) (Information, ECF No. 20).

On the same day, Murray entered into a written Plea Agreement with the United States (ECF No. 22) which provides in pertinent part that he will plead guilty to all four counts of the Information (¶1). The Plea Agreement provides that the mandatory minimum term of imprisonment on Count 2 is seven years (i.e., 84 months) and the mandatory minimum term of imprisonment on Count 4 is twenty-five years (i.e., 300 months). *Id.* The same paragraph provides that these two sentences must be served consecutively to one another and to any term imposed on the other counts. The Plea Agreement provides in ¶ 6 that "[t]he parties have agreed that an appropriate sentence in this case is imprisonment is 384 months. *Id*. at PageID 62. Defendant Murray signed the Plea Agreement on April 21, 2015. *Id.* at PageID 64.

The plea colloquy occurred June 3, 2015, and has been transcribed at ECF No. 86. Mr. Murray appeared with counsel Paul Laufman. Murray was sworn to testify truthfully. *Id*. at PageID 262. Murray testified he attended a semester of college at the University of Cincinnati Blue Ash campus. *Id*. at PageID 264. He swore that he had read the Information and discussed

it with Laufman and that he understood the charges. *Id*. at PageID 265. Murray pleaded guilty separately to each of the four counts. *Id*. at PageID 271. Murray swore he was satisfied with the advice Laufman had given him. *Id*. at PageID 272. Judge Dlott explained the maximum and minimum sentences, including consecutive sentencing, and Murray swore he understood. *Id*. at PageID 275-76.

Assistant United States Attorney Springer then summarized the Plea Agreement, including the agreed sentence of 384 months. *Id*. at PageID 288. Murray swore that the Plea Agreement represented his entire agreement with the Government. *Id*. at PageID 290. Laufman confirmed that to be the truth. *Id.* Murray swore, in response to Judge Dlott's question, that no one had made any promise or assurance to him to get him to enter into the Plea Agreement that was not contained in that document. *Id*. at PageID 290-91. Asked the same question in a different form, he again swore that, aside from what was in the Plea Agreement, no one had made him any promises or assurance of any kind to get him to plead guilty. After a statement of facts by an ATF agent and Murray's agreement that those facts were true, Judge Dlott found his pleas of guilty were knowing and voluntary. *Id*. at PageID 306.

Judge Dlott then referred the case to the Probation Department which prepared a Presentence Investigation Report (PSR) which was provided to counsel and the judge before sentencing. Having received the PSR, Mr. Laufman filed a Sentencing Memorandum on Murray's behalf (ECF No. 69). The Sentencing Memorandum acknowledges that Murray faced mandatory minimum consecutive sentences of seven years and twenty-five years. *Id*. at PageID 193. Laufman noted the pendency of legislation in Congress which would eliminate this "stacking" unless the conviction for the first offense had become final before the second offense was charged. *Id*. at PageID 195-96.

Murray was sentenced on May 9, 2016 (Transcript, ECF No. 88). Murray acknowledged that he had discussed the pre-sentence documents the Court was considering with Laufman. *Id*. at PageID 333. Judge Dlott adopted the statement of facts and the sentencing guideline recommendations in the PSR with no objection by either party. *Id*. at PageID 334, 337. She noted that the PSR recommended the sentence that had been agreed upon, 384 months. In addressing the Court prior to sentencing, Laufman indicated he had initially not expected the Government would "stack" the firearms charges because he had not seen that before. *Id*. at PageID 350-51. He acknowledged that the reform bill mentioned in the Sentencing Memorandum had not been enacted. *Id.*

During his own lengthy allocution, Murray said that he and his lawyer were expecting eight to ten years. *Id*. at PageID 363. Judge Dlott eventually imposed a sentence of twenty-five years, seven years below the mandatory minimum. PageID 381. Murray made no effort to withdraw his plea and no assertion that the sentence was inconsistent with the Plea Agreement or induced by some promise or advice not reflected in the Plea Agreement.

Murray appealed to the Sixth Circuit. His appointed counsel filed a brief under *Anders v. California*, 386 U.S. 738 (1967), asserting there were no viable issues for appeal. *United States v. Murray,* Case No. 16-3513 (6th Cir. May 11, 2017)(unreported; copy at ECF No. 100, PageID 446). The Sixth Circuit found the plea was proper under Fed. R. Crim. P. 11 and that the sentence of 300 months was proper, given the Government's motion to reduce. *Id.* Appellate counsel indicated Murray wanted to raise three issues of ineffective assistance of trial counsel which were not sufficiently developed to permit presentation on appeal:

> (1) trial counsel's failure to anticipate the government's stacking of
> the § 924(c) offenses and advice to proffer based on the conclusion
> that Murray would face eight to ten years of imprisonment at
> sentencing; (2) trial counsel's failure to raise whether the Hobbs

Act robbery constituted a "crime of violence" under § 924(c); and (3) trial counsel's failure to raise the fact that the district court judge had recently been the victim of a home invasion as a basis to request assignment to a different sentencing judge.

*Id.* at PageID 449. Murray then filed the instant Motion, pleading six grounds for relief:

> **Ground One:** Petitioner Murray states a valid claim that he received ineffective assistance of counsel under the Sixth Amendment and *Strickland v. Washington*.
>
> **Supporting Facts:** Petitioner respectfully submits that defense counsel Phillip M. Laufman, Esq. induced him to change his plea of not guilty to guilty based on patently erroneous and incorrect advice rendered to him. It is unprofessional conduct for an attorney to understate or overstate the risks, hazards, or prospects of the case to exert undue influence on his/her client's decision as to the plea to be entered. In the instant case, defense counsel 's action fell below an objective standard of reasonableness and was not the result of legitimate strategy that resulted in Petitioner being egregiously prejudicesd [sic]. In March of 2015 while incarcerated in the Cincinnati, Ohio Criminal Justice Center in pre-trial custody, a "meeting, debriefing or proffer" was arranged by defense counsel Laufman. In attendance at this "proffer" were AUSA Anthony Springer, Esq., Special Agents of the A.T.F.&E and D.E.A. in which defense counsel Laufman emphatically encouraged, instructed and directed Petitioner Murray to admit his involvement in any robberies with a guarantee of a 8 to 10 year sentence.
>
> **Ground Two:** Petitioner Murray's acceptance of the plea agreement cannot be construed as voluntary, knowing or intelligently entered into when he could NOT have possibly understood or realized the consequences of entering a guilty plea agreement as the "misadvice" provided to Petitioner Murray promised and assured him a sentence of eight to ten years in federal prison by defense counsel Phillip M. Laufman, Esq. Ultimately, Petitioner received a sentence of 300 months when sentenced by U. S. District Judge Susan J. Dlott on Counts One through Four based on defense counsel's "misadvice" must be

viewed upon as ineffective assistance of counsel. *See Lee v. United States*, 2017 WL 2694701 (6th Cir . 2017); see also *McCarthy v. United States,* 394 U. S . 459, 466 (1969). The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open and available to Petitioner Murray. See *North Carolina v. Alford*, 400 U.S. 25 , 31, 91 S. Ct. 160, 164, 27 L. Ed. 162 (1970). It must be done with sufficient awareness of the relevant circumstances and likely consequences. See *McMann v. Richardson*, 387 U.S. at 759, 766, 90 S.Ct. 1441 (1970).

**Ground Three:** Petitioner Murray's acceptance of the plea agreement cannot be construed as being voluntary, knowing or intelligently entered into.

**Supporting Facts:** Petitioner Murray respectfully avers that under the circumstances and the information and supposed facts provided to him by defense counsel regarding his exposure in punishment and the sentence to be imposed by the Court, he could not have possibly understood or realized the consequences of entering a guilty plea. See *Lee v. United States*, 2017 WL 2694701 (6th Cir. 2017). The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant (Murray). See *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Defense counsel's advice should have permitted Petitioner Murray to make an informed and conscious choice. Of course, with the erroneous and inaccurate information provided to him, this was made literally impossible. See *McCarthy v. United States*, 394 U.S. 459, 466 (1969).

**Ground Four:** Petitioner Murray's convictions on Counts Two & Four of the Information charging violations of 18 USC§ 924(c) are unconstitutional due to the fact predicate "Hobbs Act" robberies as defined by 18 U.S.C. § 1951 do not qualify as crimes of violence as a matter of law.

**Supporting Facts:** Petitioner Murray respectfully advances the proposition that the relevant portion of 18 U.S.C. § 924(c) which defines a "crime of violence" contains two clauses. The first clause-924(c)(3)(A) is commonly referred to as the "force" clause.

The other-924(c)(3)(B) is commonly referred to as the residual clause . Thus, Hobbs Act robbery under § 1951 categorically fails to qualify as a "crime of violence" under§ 924(c)(3)' s force clause since pursuant to§ 1951, the offense can be committed simply by putting one in fear of future injury to his her person or property, which 1) does not require the threat of violent physical force, and ~ does not require an intentional threat of the same.

**Ground Five:** The U.S. District Court was under the incorrect assumption that it had no alternative but to impose a "consecutive" sentence regarding the firearm charge contained in Count Four of the Information commonly referred to as stacking.

**Ground Six:** The U.S. District Court was not aware of its authority pursuant to 18 U.S.C. § 3553(e) to sentence Petitioner Murray below the statutory minimum on Count Four.

(Motion, ECF No. 102).

# Analysis

**Grounds Two through Six Are Barred by Procedural Default**

A prisoner seeking relief under 28 U.S.C. § 2255 must allege either "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid," *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Nichols v. United States*, 563 F.3d 240, 250 (6th Cir. 2009). In other words, to warrant relief under § 2255, a prisoner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect of influence on the guilty plea or the jury's verdict. *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir.

2006), *citing Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). To obtain relief under 28 U.S.C. § 2255, a defendant must establish the denial of a substantive right or defect in the trial that is inconsistent with the rudimentary demands of fair procedure. *United States v. Timmreck,* 441 U.S. 780 (1979); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)(*per curiam*). Relief under 28 U.S.C. § 2255 is available when a federal sentence was imposed in violation of the Constitution or laws of the United States or the trial court was without jurisdiction or the sentence is in excess of the maximum sentence allowed by law, or is "otherwise subject to collateral attack." *United States v. Jalili,* 925 F.2d 889, 893 (6th Cir. 1991).

Persons convicted of federal crimes have a right to appeal to the appropriate circuit court of appeals and to seek review in the United States Supreme Court. Considering the efficiency of having all issues dealt with in one proceeding, the federal courts have encouraged use of direct review to the fullest possible extent. Yackle, POSTCONVICTION REMEDIES, §108 (1981). A motion to vacate under § 2255 is not a substitute for direct appeal. *United States v. Duhart,* 511 F.2d 7 (6th Cir. 1975); *DiPiazza v. United States*, 471 F.2d 719 (6th Cir. 1973). Absent manifest injustice or special circumstances such as a change in the law, § 2255 motions will be dismissed summarily if they raise claims that were or might have been asserted on direct review. Hertz & Liebman, Federal Habeas Corpus Practice and Procedure 6th, §41.7(e)(2011), *citing Reed v. Farley*, 512 U.S. 339, 358 (1994); *Withrow v. Williams*, 507 U.S. 680, 721 (1993); *Davis v. United States,* 417 U.S. 333, 342 (1974); *Kaufman v. United States*, 394 U.S. 217, 227 n.8 (1969); Yackle, POSTCONVICTION REMEDIES, §108 (1981)*, citing Mars v. United States,* 615 F.2d 704 (6th Cir. 1980); *Mathews v. United States,* 11 F.3d 583 (6th Cir. 1993).

It is well-established that a § 2255 motion "is not a substitute for a direct appeal." *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013), *quoting Regalado v. United States*, 334 F.3d

520, 528 (6th Cir. 2003) (citing *United States v. Frady*, 456 U.S. 152, 167-68 (1982)).

Accordingly, claims that could have been raised on direct appeal, but were not, will not be

entertained via a motion under § 2255 unless the petitioner shows: (1) cause and actual prejudice

to excuse his failure to raise the claims previously; or (2) that he is "actually innocent" of the

crime. *Ray, supra*, *citing Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal citations

omitted).

None of Murray's grounds for relief were raised on direct appeal.

With respect to Ground One, ineffective assistance of trial counsel, the federal courts

prefer that such claims be brought by way of a § 2255 Motion. *Griffin v. United States*, 330 F.3d

733, 737 (6th Cir. 2006). Procedural default doctrine does not bar the 2255 motion even if the

issue could have been raised on direct appeal. *Massaro v. United States*, 538 U.S. 500 (2003);

*United States v. Neuhausser*, 241 F.3d 460 (6th Cir. 2001); *United States v. Fortson,* 194 F.3d

730, 736 (6th Cir. 1999). Murray's First Ground for Relief is therefore not barred by his failure

to raise it on direct appeal.

The procedural default doctrine in habeas corpus is described by the Supreme Court as

follows:

> In all cases in which a state prisoner has defaulted
> his federal claims in state court pursuant to an
> adequate and independent state procedural rule,
> federal habeas review of the claims is barred unless
> the prisoner can demonstrate cause of the default
> and actual prejudice as a result of the alleged
> violation of federal law; or demonstrate that failure
> to consider the claims will result in a fundamental
> miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406

(6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional

9

rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963). *Coleman*, 501 U.S. at 724. The procedural default analysis of *Wainwright* and its progeny is fully applicable to § 2255 motions. *United States v. Frady*, 456 U.S. 152, 167 (1982); *Kaufman v. United States*, 394 U.S. 217 (1969); *Ratliff v. United States*, 999 F.2d 1023 (6th Cir. 1993).

Grounds Two through Six are all claims of trial court error and are dependent on the record available on appeal. Thus they are procedurally defaulted and barred from merit review in these § 2255 proceedings unless Murray can show excusing cause and prejudice. He offers no excuse as to Grounds Five and Six. He offers various excuses as to Grounds Two, Three, and Four.

As to Ground Two, Murray claims that his acceptance of the Plea Agreement was based on misadvice from Laufman and that his appellate attorney, Joseph West, should have raised the issue on appeal (Motion, ECF No. 102, PageID 456). Raising that issue on direct appeal would have been unsuccessful. The Sixth Circuit reviewed de novo the validity of Murray's guilty plea. *United States v. Murray,* Case No. 16-3513 (6th Cir. May 11, 2017)(unreported; copy at ECF No. 100, PageID 446, 447), *citing United States v. Dixon*, 479 F.3d 431 (6th Cir. 2007). It concluded that the record showed the guilty plea was voluntary, knowing, and intelligent. *Id. citing United States v. Gardner,* 417 F.3d 541, 544 (6th Cir. 2005). If the claim would have been

unsuccessful, it cannot have been ineffective assistance of appellate counsel to have failed to raise it because the failure was neither defective performance nor a cause of any prejudice to Murray.  See *Strickland v. Washington, infra.*

As to Ground Three, Murray asserts it was not raised on appeal because he had to spend hundreds of hours in the prison law library to come to understand this claim.  This does not established excusing cause and prejudice because Murray had appointed counsel on appeal and the Sixth Circuit, on *Anders* review, found the plea was knowing, intelligent, and voluntary.

As to Ground Four, Murray asserts he was unaware of the "all-important-fact" that Hobbs Act robberies do not qualify as crimes of violence and in any event his appellate attorney should have raised the issue.

The Hobbs Act violation pleaded in Count 1 of the Information charged Murray with robbery by taking from the person of another "against their will and by means of actual and threatened force, violence, and fear of injury."  (ECF No. 20, PageID 46.)  The Hobbs Act itself defines robbery for Hobbs Act purposes to mean "the unlawful taking or obtaining of personal property from the person, or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury . . . ."  Thus the Hobbs Act violation charged in Count 1 contains an element of the use or threatened use of force.  This charge thus qualifies under the "elements" clause of 18 U.S.C. § 924(c), to wit, (3)(A), and does not depend on the residual clause, (c)(3)(B).

Murray asserts that his two § 924(c) convictions are predicated on Hobbs Act robberies (ECF No. 102, PageID 521), but that is not correct.  His second 924(c) conviction as charged in Count Four, depends on his conviction in Count Three of armed bank robbery, unquestionably a crime of violence.

11

Based on this analysis, a claim on direct appeal that the § 924(c) convictions are unconstitutional would have been unavailing. Before Murray's conviction was affirmed in May 2017, the Sixth Circuit held Section 924(c)'s definition of a crime of violence is constitutional despite *Johnson v. United States*, 135 S.Ct. 2551 (2015) . *United States v. Taylor*, 814 U.S. 340 (6th Cir. 2016). It cannot be deficient performance to fail to raise a claim that would not have succeeded. Therefore Murray's ineffective assistance of appellate counsel excuse for procedural default of Ground Four is unavailing.

As noted above, no excuse is offered for not raising Grounds Five and Six on direct appeal. Therefore the Magistrate Judge concludes Grounds Two through Six are barred by failure to raise them on direct appeal.


**Ground One is Without Merit on the Basis of the Record**


In his First Ground for Relief, Murray claims his conviction should be set aside because his attorney, Paul Laufman, in a proffer on March 2015 "emphatically encouraged, instructed, and directed Petitioner Murray to admit his involvement in any robberies with a guarantee of a 8 to 10 year sentence." (ECF No. 102, PageID 455. Emphasis in the original.)

The governing standard for ineffective assistance of trial counsel was adopted by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires

showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

There is evidence to support the possibility that Laufman predicted an 8-10 year sentence at the time of the proffer; he said at sentencing that he had never previously seen a case where § 924 violations were "stacked" as they were here by charging Count Four as a subsequent offense.

However, March 2015 is **before** any of the formal proceedings to enter a guilty plea. It was a month before the Plea Agreement was signed in which the mandatory minimums are discussed and a 384 month sentence was agreed on. It was three months before the plea colloquy in which Murray swore under oath that no one had made him any promises or assurance to get him to plead guilty other than what was in the Plea Agreement. It was fourteen months before the sentencing hearing where again Murray said nothing about any eight to ten year promise. Under Fed. R. Crim. P. 11(d), he could have withdrawn his guilty plea for any reason or for no reason at any time before the plea was accepted. Even after that, he could have moved to withdraw the plea upon a showing that it had been induced by what he now claims was a guarantee of a very different sentence from the one he received. He did none of these things, allowing the Court to proceed as if he had told the truth when he agreed both in writing and orally that he understood the mandatory minimum sentences on Counts Two and Four.

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e. g. bribes).

*Brady v. United States*, 397 U.S. 742, 755 (1970). The voluntariness of a guilty or no contest plea is determined in light of all relevant circumstances surrounding the plea. *Brady*, 397 U.S. at 749. Where a defendant is "fully aware of the likely consequences" of a plea, however, it is not unfair to expect him to live with those consequences. *Mabry v. Johnson*, 467 U.S. 504, 511 (1984). A plea-proceeding transcript which suggests that a guilty or no contest plea was made voluntarily and knowingly creates a "heavy burden" for a petitioner seeking to overturn his plea.

*Garcia v. Johnson*, 991 F.2d 324, 326–28 (6ᵗʰ Cir. 1993). Where the transcript shows that the guilty or no contest plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* at 326–27.

A court cannot rely on the petitioner's alleged "subjective impression" "rather than the bargain actually outlined in the record," for to do so would render the plea colloquy process meaningless. *Ramos v. Rogers*, 170 F.3d 560, 566 (6ᵗʰ Cir. 1999). If the plea colloquy process were viewed in this light, any defendant who alleged that he believed the plea bargain was different from that outlined in the record would have the option of withdrawing his plea despite his own statements during the plea colloquy indicating the opposite. *Id.*

Murray has not shown ineffective assistance of trial counsel. He alleges Laufman gave him advice in March 2015 that predicted an eight-to-ten year sentence. Based on Laufman's experience, that was at the time a good prediction. But Murray learned both in writing and orally that that prediction was no longer a good one and that he faced a much longer sentence, a sentence of which he was specifically advised. After that new advice, he persisted in his intention to plead guilty and never mentioned the supposed guarantee from counsel until he filed the Motion to Vacate, almost three years after the guarantee was supposedly made and despite numerous opportunities to bring it up. If Laufman gave the alleged advice before the Plea Agreement was signed, there is no proof that it was deficient performance to do so, i.e., no proof that "stacking" under circumstances such as presented by this case were common practice. Moreover, there is no showing of prejudice from the Laufman prediction because Murray was repeatedly advised after that point in time that the mandatory minimum sentence was 384 months, a sentence he agreed to.

**Conclusion**


Because a review of the records and prior proceedings in the case reveals that Murray is

not entitled to relief, the Magistrate Judge respectfully recommends that the § 2255 Motion be

denied.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be

denied a certificate of appealability and the Court should certify to the Sixth Circuit that any

appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma*

*pauperis*.


January 22, 2018.

                                                    s/ *Michael R. Merz*
                                                    United States Magistrate Judge


**NOTICE REGARDING OBJECTIONS**


Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the
proposed findings and recommendations within fourteen days after being served with this Report
and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen
days because this Report is being served by mail. .Such objections shall specify the portions of
the Report objected to and shall be accompanied by a memorandum of law in support of the
objections. If the Report and Recommendations are based in whole or in part upon matters
occurring of record at an oral hearing, the objecting party shall promptly arrange for the
transcription of the record, or such portions of it as all parties may agree upon or the Magistrate
Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may
respond to another party's objections within fourteen days after being served with a copy thereof.
Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See*
*United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140,
153-55 (1985).