# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

UNITED STATES OF AMERICA,

                    Plaintiff,        :       Case No. 1:15-cr-026 (3)

                                      District Judge Susan J. Dlott
-  vs  -                            Magistrate Judge Michael R. Merz

AARON ANTHONY MURRAY,

                    Defendant.       :

---

# DECISION AND ORDER ADOPTING REPORT AND RECOMMENDATIONS

---

This case is before the Court on Defendant Murray's Objections (ECF No. 107) to the

Magistrate Judge's Report and Recommendations ("Report," ECF No. 104) recommending

denial of Defendant's Motion to Vacate Sentence under 28 U.S.C. § 2255 ("Motion," ECF No.

102). As required by Fed. R. Civ. P. 72(b)(3), the Court reviews the Report de novo.

The Motion pleads the following six grounds for relief:

> **Ground One:** Petitioner Murray states a valid claim that he
> received ineffective assistance of counsel under the Sixth
> Amendment and *Strickland v. Washington*.
>
> **Supporting Facts:** Petitioner respectfully submits that defense
> counsel Paul M. Laufman, Esq. induced him to change his plea of
> not guilty to guilty based on patently erroneous and incorrect
> advice rendered to him. It is unprofessional conduct for an attorney
> to understate or overstate the risks, hazards, or prospects of the

1

case to exert undue influence on his/her client's decision as to the plea to be entered. In the instant case, defense counsel 's action fell below an objective standard of reasonableness and was not the result of legitimate strategy that resulted in Petitioner being egregiously prejudicesd [sic]. In March of 2015 while incarcerated in the Cincinnati, Ohio Criminal Justice Center in pre-trial custody, a "meeting, debriefing or proffer" was arranged by defense counsel Laufman. In attendance at this "proffer" were AUSA Anthony Springer, Esq., Special Agents of the A.T.F.&E and D.E.A. in which defense counsel Laufman emphatically encouraged, instructed and directed Petitioner Murray to admit his involvement in any robberies with a guarantee of a 8 to 10 year sentence.

**Ground Two:** Petitioner Murray's acceptance of the plea agreement cannot be construed as voluntary, knowing or intelligently entered into when he could NOT have possibly understood or realized the consequences of entering a guilty plea agreement as the "misadvice" provided to Petitioner Murray promised and assured him a sentence of eight to ten years in federal prison by defense counsel Paul M. Laufman, Esq. Ultimately, Petitioner received a sentence of 300 months when sentenced by U. S. District Judge Susan J. Dlott on Counts One through Four based on defense counsel's "misadvice" must be viewed upon as ineffective assistance of counsel. *See Lee v. United States*, 2017 WL 2694701 (6th Cir . 2017); see also *McCarthy v. United States,* 394 U. S . 459, 466 (1969). The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open and available to Petitioner Murray. See *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27 L. Ed. 162 (1970). It must be done with sufficient awareness of the relevant circumstances and likely consequences. See *McMann v. Richardson*, 387 U.S. at 759, 766, 90 S.Ct. 1441 (1970).

**Ground Three:** Petitioner Murray's acceptance of the plea agreement cannot be construed as being voluntary, knowing or intelligently entered into.

**Supporting Facts:** Petitioner Murray respectfully avers that under the circumstances and the information and supposed facts provided

to him by defense counsel regarding his exposure in punishment and the sentence to be imposed by the Court, he could not have possibly understood or realized the consequences of entering a guilty plea. See *Lee v. United States*, 2017 WL 2694701 (6th Cir. 2017). The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant (Murray). See *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Defense counsel's advice should have permitted Petitioner Murray to make an informed and conscious choice. Of course, with the erroneous and inaccurate information provided to him, this was made literally impossible. See *McCarthy v. United States*, 394 U.S. 459, 466 (1969).

**Ground Four:** Petitioner Murray's convictions on Counts Two & Four of the Information charging violations of 18 USC§ 924(c) are unconstitutional due to the fact predicate "Hobbs Act" robberies as defined by 18 U.S.C. § 1951 do not qualify as crimes of violence as a matter of law.

**Supporting Facts:** Petitioner Murray respectfully advances the proposition that the relevant portion of 18 U.S.C. § 924(c) which defines a "crime of violence" contains two clauses. The first clause-924(c)(3)(A) is commonly referred to as the "force" clause. The other-924(c)(3)(B) is commonly referred to as the residual clause . Thus, Hobbs Act robbery under § 1951 categorically fails to qualify as a "crime of violence" under§ 924(c)(3)' s force clause since pursuant to§ 1951, the offense can be committed simply by putting one in fear of future injury to his her person or property, which 1) does not require the threat of violent physical force, and ~ does not require an intentional threat of the same.

**Ground Five:** The U.S. District Court was under the incorrect assumption that it had no alternative but to impose a "consecutive" sentence regarding the firearm charge contained in Count Four of the Information commonly referred to as stacking.

**Ground Six:** The U.S. District Court was not aware of its authority pursuant to 18 U.S.C. § 3553(e) to sentence Petitioner Murray below the statutory minimum on Count Four.

(Motion, ECF No. 102.)

**Ground One**

In his Objections as to the first Ground for Relief, Murray repeatedly voices suspicions about how attorney Paul Laufman came to be appointed to represent him in this case when no federal charges had yet been filed. Under this Court's Criminal Justice Act Plan, counsel will be appointed by the Magistrate Judge on criminal duty[1] for a person whom the United States Attorney has identified as the target of a federal criminal investigation. Mr. Laufman is a regular member of this Court's list of attorneys to be appointed under the Plan. The purpose is to provide counsel to those who are or are about to become federal criminal defendants as early in the process as possible. Thus it is a process designed to protect the interests of a defendant and nothing sinister is to be inferred from this early appointment. The record shows that, as Murray admits in his Objections, he was still confined on state charges when the appointment was made. In fact, his appearance in federal court for arraignment was pursuant to writ of habeas corpus ad prosequendum (ECF No. 33).

While Murray repeatedly asserts that the Magistrate Judge's proposed findings are wrong in many different ways, he does not dispute that the Plea Agreement had an agreed sentence of 384 months, much more than the eight to ten years Murray claims he was guaranteed. He does not dispute that he swore under oath at the plea colloquy he attended a semester of college at the University of Cincinnati Blue Ash campus. Thus he was fully literate and able to understand the

---

[1] This would have been either Magistrate Judge Karen Litkovitz or Magistrate Judge Stephanie Bowman. Magistrate Judge Merz does not perform regular criminal duty at the Cincinnati location of court and was designated to be involved only when the § 2255 Motion was filed (See ECF No. 103).

written Plea Agreement. (Transcript, ECF No. 86, at PageID 264. He swore that he had read the Information and discussed it with Laufman and that he understood the charges. *Id*. at PageID 265. Murray pleaded guilty separately to each of the four counts. *Id*. at PageID 271. Murray swore he was satisfied with the advice Laufman had given him. *Id*. at PageID 272. The Court explained the maximum and minimum sentences, including consecutive sentencing, and Murray swore he understood. *Id*. at PageID 275-76. Murray swore that the Plea Agreement represented his entire agreement with the Government. *Id*. at PageID 290. Laufman confirmed that to be the truth. *Id.* In response to Judge Dlott's question, Murray swore that no one had made any promise or assurance to him to get him to enter into the Plea Agreement that was not contained in that document. *Id*. at PageID 290-91. Asked the same question in a different form, he again swore that, aside from what was in the Plea Agreement, no one had made him any promises or assurance of any kind to get him to plead guilty. After a statement of facts by an ATF agent and Murray's agreement that those facts were true, the Court found his pleas of guilty were knowing and voluntary. *Id*. at PageID 306.

The Plea Agreement with the agreed sentence was signed April 23, 2015 (ECF No. 22). The plea colloquy at which the Plea Agreement was discussed and Murray gave the testimony on which the Court based its finding his plea was voluntary occurred on June 3, 2015, six weeks after the Plea Agreement was signed, allowing Murray ample time to consider what it was he had agreed to. Nevertheless at the plea colloquy he pleaded guilty in accordance with the agreement. Sentence was not imposed until almost a year later on May 9, 2016. During all that time, Murray never once attempted to withdraw his guilty plea or to suggest in any way that he did not understand or agree to what was in the Plea Agreement.

Murray's claim now is that his plea was involuntary because his attorney guaranteed him a much lower sentence. That claim is parallel to the situation in *Ramos v. Rogers,* 170 F.3d 560 (6th Cir. 1999), where a defendant claimed to be entitled to a sentence completely at odds with an agreed sentence in a plea agreement and with the agreement as memorialized in the record of the plea colloquy. As the *Ramos* court held, "[i]f the plea colloquy process were viewed in this light, any defendant who alleged that he believed the plea bargain was different from that outlined in the record would have the option of withdrawing his plea despite his own statements during the plea colloquy indicating the opposite." *Id.* at 566. It simply is not the law that a literate adult who has signed a Plea Agreement with an agreed sentence of 384 months and to whom the agreement and consequences have been explained thoroughly can receive a sentence of 300 months and then wait almost three years to claim he was promised a lighter sentence.

**Grounds Two through Six**

The Report found that Grounds Two through Six were procedurally defaulted because they could have been raised on direct appeal but were not (ECF No. 104, PageID 592-97). Murray asserts he can establish cause and prejudice to excuse that default and refers the Court to pages 26 through 31 of his § 2255 Motion (Objections, ECF No. 107, PageID 635, referencing ECF No. 102, PageID 490-95).

That section of his Motion begins with the unexceptionable proposition that ineffective assistance of counsel can provide cause and prejudice to excuse a procedural default (Motion, ECF No. 102, PageID 491, citing *Murray v. Carrier*, 477 U.S. 478 (1985). But then Murray proceeds for several pages to recite truisms about ineffective assistance without ever making a

complete argument about how his appellate attorney provided ineffective assistance. The closest he comes is one paragraph which reads:

> Moreover, appellate counsel West's failure to raise obvious issues(s) in the record, such as [1] the "misadvice" of defense counsel regarding the sentence exposure of Petitioner after debriefing law enforcement and accepting the plea agreement, [2] the "stacking" of the firearms counts, [and 3] failure to have the clothing discovered by law enforcement allegedly worn in the two robberies independently DNA tested for other possible suspects constitutes ineffective assistance of counsel. See *Mapes v. Coyle*, 171 F.3d 408 (6th Cir.1999); *see also Lucas v. O'Dea*, 179 F.3d 412, 419 (6th Cir . 1999); *Mason v. Hanks*, 97 F.3d 887, 894 (7th Cir. 1996).

*Id.* at PageID 495.

The Report found Murray's Grounds Two through Six were procedurally defaulted because they could have been but were not raised on direct appeal. In order to prove ineffective assistance of appellate counsel sufficient to excuse the procedural default of a claim on direct appeal, a § 2255 movant must show that the claims not raised were stronger than the claims that were raised. To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), *citing Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id.*, *citing Wilson.* But Murray makes no argument about how his Grounds Two through Six are stronger than the claims raised, nor does he make any argument as to how it was ineffective assistance of appellate counsel to fail to raise the three possible grounds mentioned above. That is, he does not pursue the three claims he says were omitted as a result of ineffective assistance of appellate counsel nor

does he attempt to show how Grounds Two through Six would have been stronger than those actually raised.

Omission of the three claims mentioned in the § 2255 Motion was not ineffective assistance of appellate counsel. Laufman told Murray that he had never seen a prosecutor "stack" claims such as these, but by the time the Plea Agreement was signed, the prosecutor's intention to do so was clear and Murray agreed to it. He has not even attempted to show that the stacking was unlawful, nor has he offered any evidence that DNA testing of the recovered clothing would have identified someone else.

Murray has not shown it was ineffective assistance of appellate counsel to fail to raise his Grounds Two through Six and the Magistrate Judge's conclusion that they are procedurally defaulted is therefore ADOPTED.

Moreover, even if the claims were not procedurally defaulted, the Court would dismiss them on the merits.

Grounds Two and Three are without merit for the same reasons as Ground One: a defendant who has sworn he understands and consents to a Plea Agreement with an agreed sentence of 384 months cannot remain silent for almost three years and then be heard to understand he was guaranteed eight to ten years.

As to Ground Four, Murray's Objections argue at some length that his convictions are unconstitutional because "the predicate Hobbs Act robberies as defined by [18 U.S.C.] § 1951 do not qualify as 'crimes of violence' as a matter of law." (ECF No. 107, PageID 624-28.) He fails to deal at all with *United States v. Taylor*, 814 F.3d 340 (6th Cir. 2016), which held that 18 U.S.C. § 924(c) was not unconstitutionally vague despite *Johnson v. United States*, 135 S.Ct.

2551 (2015).  As the Report notes, *Taylor* was decided before Murray's conviction was upheld on appeal (ECF No. 104, PageID 597).

As to Grounds Five and Six, Murray was sentenced to sixty months on Count 2 under 18 U.S.C. § 924(c)(1)(A)(ii) and 240 months on Count 4 under 18 U.S.C. § 924(c)(1)(A)(iii) and (c)(1)(C)(i) (Judgment, ECF No. 77, PageID 237).  The first of these two sections requires a sentence for use of a firearm in committing a Hobbs Act violation "in addition to" the sentence for the Hobbs Act crime.  The second of these sections requires a twenty-five year term of imprisonment for firearm use in a second Hobbs Act violation.  The Court imposed only one day imprisonment each for the underlying offenses and departed downward by seven years from the mandatory minimum provided by statute.  These is no proof that the Court imposed a sentence higher than that provided by law.

**Conclusion**

The Court therefore OVERRULES Murray's Objections and ADOPTS the Report and Recommendations.  Defendant's Motion to Vacate under 28 U.S.C. § 2255 (ECF No. 102) is DISMISSED WITH PREJUDICE.  Because reasonable jurists would not disagree with this conclusion, Petitioner is denied a certificate of appealability and the Court certifies to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

_____s/Susan J. Dlott_____
Susan J. Dlott
United States District Judge