IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | Case No. 1:15-cr-26 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | **ORDER DENYING MOTION FOR** |
| AARON MURRAY, | : | **COMPASSIONATE RELEASE** |
| | : | |
| Defendant. | : | |
| | : | |

This matter is before the Court on Defendant Aaron Murray's Motion for Compassionate Release, Addendum to *Pro Se* Motion for Compassionate Release, and Supplemental Brief in Support of Request for Compassionate Release. (Docs. 162, 169, 181.) The United States opposes a compassionate release for Murray. (Doc. 172, 179.) For the reasons that follow, Murray's Motion, Addendum, and Supplemental Brief will be **DENIED**.

I. **BACKGROUND**

A. **Murray's Offense and Conviction**

On June 3, 2015, Defendant Aaron Murray pled guilty to Counts 1–4 of the Bill of Information and waived indictment. (Doc. 22; Doc. 38.) Count 1 charged Murray with violating 18 U.S.C. § 1951 and 18 U.S.C. § 2, interference with commerce by robbery and aiding and abetting the interference with commerce by robbery, which carried a term of imprisonment of up to twenty years, a fine of $250,000, and supervised release of up to three years. (Doc. 22 at PageID 60.) Count 2 charged Murray with violating 18 U.S.C. § 924(c)(1)(A)(ii), using, carrying, and brandishing a firearm during and in relation to a crime of violence, which carried a term of imprisonment of seven years to life to be served consecutive to any sentence on the other counts, a fine of up to $250,000, and supervised release of up to five years. (*Id.*) Count 3

charged Murray with violating 18 U.S.C. §§ 2113(a) and (d), armed bank robbery, which carried a term of imprisonment of twenty-five years, a fine of up to $250,000 dollars, and supervised release of up to five years. (*Id.*) Count 4 charged Murray with violating 18 U.S.C. §§ 924(c)(1)(A)(ii) and 924(c)(1)(C)(i), using, carrying, and brandishing a firearm during and in relation to a crime of violence, which carried a term of imprisonment of twenty-five years to life to be served consecutive to any sentences on the other counts, a fine of up to $250,000, and supervised release of up to five years. (*Id.* at PageID 61.) Murray also was required to pay a mandatory special assessment on each count of conviction. (*Id.*)

Pursuant to the Statement of Facts to which he admitted, on August 17, 2014, Murray along with his co-defendants, Savoy Carpenter and James Crawford, planned and cased the robbery of a Micro Center store in Cincinnati, Ohio. (*Id.* at PageID 65.) Murray rode with Carpenter to the Micro Center store prior to the commission of the offense, where they mapped out escape routes and finalized the plan for the robbery. (*Id.*) Murray performed the robbery, and Carpenter was the getaway driver. (*Id.*)

On August 17, 2014, Murray entered the store during business hours, masked in a red bandana, black hat, and blue zip up hoodie while carrying a firearm. (*Id.*) He ordered all customers and employees to the ground. (*Id.*) Murray pointed the firearm at the head of the manager of the store and demanded the manager take him to the safe. (*Id.*) Upon arriving at the safe, Murray forced the manager to open the safe at gun point and ordered him to remove the money and place it in a bag. (*Id.*) Once the money was placed in the bag, Murray then fled the store. (*Id.*) He joined up with Carpenter, and they both fled the scene. (*Id.*) Recognizing law enforcement was in hot pursuit, Murray and Carpenter abandoned Carpenter's car and ran to a wooded area. (*Id.* at PageID 66.) Murray and Carpenter then contacted Crawford and requested

he come to their rescue. (*Id.*) Crawford picked up the pair and drove them to safety. (*Id.*) The total loss sustained by Micro Center as a result of the robbery was $29,259.04. (*Id.*)

On October 15, 2014, Murray used and brandished a firearm during the commission of the robbery of a Fifth Third Bank in Cincinnati, Ohio. (*Id.*) The total loss sustained by Fifth Third Bank as a result of this offense was approximately $10,839.00. (*Id.*)

Murray admits that he executed a written transfer with Demarco Johnson for the Hi-Point C9 9mm, bearing serial number P1734019, which was subsequently used and recovered during the November 7, 2014 Family Dollar robbery committed by Savoy Carpenter. (*Id.* at PageID 66–67.)

On May 9, 2016, Murray was sentenced to 60 months of imprisonment on Count 2, 240 months of imprisonment on Count 4, to be served consecutively, and 1 day of imprisonment on Counts 1 and 3 to be served concurrently with all other counts. (Doc. 71.) Murray is currently incarcerated at FCI Beckley and his projected release date is July 13, 2036. *See* Federal BOP, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last viewed 1/4/2023).

**B.  Motion for Compassionate Release**

On May 27, 2020, Murray requested compassionate release from the Warden of FCI Beckley. (Doc. 162 at PageID 1012–1015.) On January 27, 2021, Murray filed a *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. 162.) His attorney filed an Addendum to his Pro Se Motion for Compassionate Release on May 3, 2021. (Doc. 169.) The Government responded in opposition. (Doc. 172.) On July 27, 2021, the Court issued an order holding Murray's motion in abeyance pending the outcome of a similar case then on appeal with the Sixth Circuit. (Doc. 173.) That case was dismissed, however, and the Court lifted the abeyance on January 10, 2022. (Doc. 177.) The Court also directed the parties to file

supplemental briefs regarding Murray's compassionate release in light of its ruling denying

Murray's co-defendant, Savoy Carpenter, compassionate release. (*Id.*) The Government filed a

Response brief (Doc. 179), and Murray filed a Supplemental Brief adopting Carpenter's Motion

to Reconsider. (Doc. 181.)

## II.    STANDARD OF LAW

Murray seeks a reduction in his sentence, otherwise known as compassionate release,

pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Section 3582(c) provides as follows:

> The court may not modify a term of imprisonment once it has been imposed
> except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon
> motion of the defendant after the defendant has fully exhausted all administrative
> rights to appeal a failure of the Bureau of Prisons to bring a motion on the
> defendant's behalf or the lapse of 30 days from the receipt of such a request by
> the warden of the defendant's facility, whichever is earlier, may reduce the term
> of imprisonment (and may impose a term of probation or supervised release with
> or without conditions that does not exceed the unserved portion of the original
> term of imprisonment), after considering the factors set forth in [18 U.S.C.
> §] 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that
> such a reduction is consistent with applicable policy statements issued by the
> Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Where, as here, a defendant has exhausted administrative remedies, the district court

must (1) determine whether "extraordinary and compelling reasons" warrant a reduction and

(2) weigh the relevant sentencing factors listed in § 3553(a). *United States v. Jones*, 980 F.3d

1098, 1101, 1108 (6th Cir. 2020).[1] "Congress did not define what constitutes an 'extraordinary

---

[1] The Sixth Circuit determined in *Jones* that the only U.S. Sentencing Commission Policy Statement potentially applicable to motions for compassionate release—U.S.S.G. § 1B1.13—is inapplicable to cases filed by federal inmates. 980 F.3d at 1109, 1111. Therefore, the district court has full discretion to define "extraordinary and

and compelling reason,' except to state that '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.'" *United States v. Hunter*, 12 F.4th 555, 561 (6th Cir. 2021) (quoting 28 U.S.C. § 994(t)), *cert. denied*, 142 S. Ct. 2771 (2022). Courts generally have discretion to define what constitutes "extraordinary and compelling" reasons. *Id.* Nonetheless, the Sixth Circuit recognizes two restrictions on that discretion:

> First, non-retroactive changes in the law, whether alone or in combination with other personal factors, are not "extraordinary and compelling reasons" for a sentence reduction. Second, facts that existed when the defendant was sentenced cannot later be construed as "extraordinary and compelling" justifications for a sentence reduction.

*Id.* at 562; *see also United States v. McCall*, No. 21-3400, — F.4th —, 2022 WL 17843865, at *15 (6th Cir. Dec. 22, 2022) (*en banc*) (resolving intra-Circuit split by holding that "[n]onretroactive legal developments do not factor into the extraordinary and compelling analysis"). More generally, the Sixth Circuit has emphasized that extraordinary and compelling reasons must be "unusual, rare, and forceful" as opposed to "ordinary and routine." *McCall*, 2022 WL 17843865, at *6 (internal citation and quotation omitted).

The § 3553 factors referenced in the statute include (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence imposed to reflect the seriousness of the offense; (3) the need to protect the public from further crimes of the defendant; (4) the sentencing guideline range; and (5) the need to avoid unwarranted sentence disparities among defendants with similar records guilty of similar conduct. 18 U.S.C. § 3553. These factors implicitly allow the Court to consider the amount of time served when determining if a reduction in sentence is appropriate. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020). Also, district courts can consider the nonretroactive changes in law relevant to

---

compelling reasons" without reference to the policy statement in § 1B1.13. *Id.* at 1111; *United States v. Elias*, 984 F.3d 516, 519–520 (6th Cir. Jan. 6, 2021).

sentencing as part of its weighing of the § 3553(a) sentencing factors. *See Hunter*, 12 F.4th at 568–569. District courts are encouraged to be "explicit and particular with their factual reasoning" when they consider the § 3553(a) factors. *Jones*, 980 F.3d at 1113.

## III. ANALYSIS

### A. No Extraordinary and Compelling Reason for Release

Murray seeks compassionate release based primarily on the nonretroactive change in law to 18 U.S.C. § 924(c). He argues that his sentence would be significantly shorter for the same crimes if he were sentenced today. Murray also argues that his rehabilitative efforts, difficult childhood, and youth at the time he committed the crimes in this case all favor his early release. For the reasons that follow, the Court finds no extraordinary and compelling reason for Murray's release.

At the time of Murray's sentencing, a defendant convicted of two or more § 924(c) violations in a single prosecution faced a 25-year mandatory minimum sentence for the second or subsequent violations of the same statute. 18 U.S.C. § 924(c). Consistent with the law of the time, Murray's two § 924(c) violations were "stacked" in the single prosecution subjecting him to a mandatory twenty-five-year term of imprisonment, which contributed to his lengthy sentence.

After Murray was sentenced, the First Step Act amended § 924(c) to change what is defined as a prior conviction for purposes of applying a twenty-five-year mandatory minimum term of imprisonment as a penalty for conviction. First Step Act of 2018, Pub. L. No. 115-391, § 403, 132 Stat. 5194, 5221–5222 (2018). As summarized in *United States v. Richardson*:

> One of the First Step Act's provisions amends sentencing language under
> § 924(c). To be clear, the Act does not change the mandatory-minimum
> sentences for defendants convicted of possessing, brandishing, or discharging a
> firearm during a crime of violence. Moreover, § 924(c) has always imposed

stiffer penalties for repeat offenders, and the Act does not change that, either.  So today, a defendant convicted under § 924(c) with a prior conviction under that section is still subject to a mandatory prison sentence of at least 25 years. § 924(c)1)(C)(i).  But the Act does change what counts as a prior conviction, and that change is significant.

948 F.3d 733, 744–745 (6th Cir. 2020).  Now, under the First Step Act, § 924(c)(1)(C) has been amended "by eliminating the phrase, 'second or subsequent conviction under this subsection,' and inserting the clause, 'violation of this subsection that occurs after a prior conviction under this subsection has become final.'"  *Id.* at 745.  "This means that a defendant would, in a general sense, have to be a repeat offender with a prior, final conviction to be eligible for the mandatory twenty-five-year enhancement."  *Id.*  There is no dispute this change is nonretroactive.  But, if charged and convicted today, Murray's sentence would be significantly shorter, because he would not be subjected to "stacking" § 924(c) convictions.

Prior to December 22, 2022, whether a district court may consider a nonretroactive change in law to support a finding that extraordinary and compelling reasons support compassionate release under 18 U.S.C. § 3582(c)(1)(A) had been the subject of conflicting rulings in the Sixth Circuit Court of Appeals.  *Compare*, *e.g.*, *Hunter*, 12 F.4th at 564 (holding that nonretroactive statutes and precedents—alone or in consideration with other factors—-cannot be an extraordinary and compelling basis for compassionate release), *with United States v. Owens*, 996 F.3d 755, 763–764 (6th Cir. 2021) (holding that a district court can rely on a nonretroactive First Step Act sentencing amendment in combination with other factors to find an extraordinary and compelling basis for compassionate release).  The Sixth Circuit resolved this split in the *en banc McCall* decision.  The majority held that "[n]onretroactive legal developments do not factor into the extraordinary and compelling analysis."  *McCall*, 2022 WL 17843865, at *15.  The majority explained that "there is nothing extraordinary about the ordinary

7

operation of our legal system, which assumes new statutes and caselaw have no retroactive effect." *Id.* at *13.[2]

As such, the Court finds that the nonretroactive change in § 924(c) is not an extraordinary and compelling reason for Murray's compassionate release. Further, the other factors Murray relies upon, his rehabilitation, difficult childhood, and youth, were fully considered by the Court at the time of sentencing and also do not establish an extraordinary reason for compassionate release.

### B. Sentencing Factors Do Not Support Release

Alternatively, even if Murray could demonstrate an extraordinary and compelling reason for release, and the law is clear he cannot, consideration of the 18 U.S.C. § 3553(a) sentencing factors would not warrant his early release. Among the factors to be considered are the nature and characteristics of the offense; Murray's criminal history; the need for the sentence imposed to reflect the seriousness of the Murray's conduct; the need to protect the public; the Guidelines range; and the need to avoid unwarranted sentencing disparities. Though a district court has great discretion, it may nonetheless abuse its discretion "if the court has given too little weight to a compelling factor in the presence of much lighter countervailing factors." *United States v. Bass*, 17 F.4th 629, 638–639 (6th Cir. 2021) (reversing and remanding district court's grant of compassionate release where the district court abused its discretion by engaging in a

---

[2] There is a split among the Circuit Courts of Appeal on this issue. Several Circuits agree with the Sixth Circuit that nonretroactive changes in law cannot support an extraordinary and compelling finding. *See United States v. Jenkins*, 50 F.4th 1185, 1198 (D.C. Cir. 2022); *United States v. Crandall*, 25 F.4th 582, 586 (8th Cir. 2022), *cert. denied*, 142 S.Ct. 2781 (2022); *United States v. Andrews*, 12 F.4th 255, 261 (3d Cir. 2021), *cert. denied*, 142 S.Ct. 1446 (2022); *United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021), *cert. denied*, 142 S.Ct. 1363 (2022). Other circuits have held that such nonretroactive changes to statutory law may be considered in connection with other factors to satisfy the extraordinary and compelling standard for compassionate release. *See United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022); *United States v. Ruvalcaba*, 26 F.4th 14, 28 (1st Cir. 2022); *United States v. McGee*, 992 F.3d 1035, 1047–1048 (10th Cir. 2021); *United States v. McCoy*, 981 F.3d 271, 286–287 (4th Cir. 2020).

substantively unreasonable balancing of the § 3553(a) factors). The Court fully considered these factors at sentencing and finds that its conclusions have not changed.

The nature and circumstances of this crime are serious. At Murray's sentencing hearing, the Court heard from the owner of the Micro Center store where Murray conducted one of his armed robberies. The manager described that he had taken extraordinary measures to provide grief counseling to his employees in addition to hiring a security guard to help his employees and customers feel safe at work after the robbery. Although Murray did not physically harm anyone, his actions will have a lifelong impact on the individuals who were held at gunpoint. And, though he stated he did not have had the intention of causing harm, anything could have gone wrong at any time, causing serious harm or death. The Court is grateful no lives were lost during these offenses, but the impact on the victims will remain.

Murray also has a prior criminal history, including the following offenses: possession of marijuana, carrying a concealed weapon, minor misdemeanor drug possession, breaking and entering, operating a motor vehicle under the influence of drugs/alcohol, and several other minor offenses. The Court remains concerned that Murray remains a danger to the public in light of his conduct in this case and prior criminal history.

Next, the Court is aware that since his incarceration, Murray has worked toward his rehabilitation and desires to be present in his family members' lives. Rehabilitation is among the best outcomes the Court could have anticipated at the time of sentencing. However, this outcome was within the range of possible outcomes it considered at the time of sentencing and therefore does not weigh strongly in favor of release. The need for the sentence imposed to reflect the seriousness of the crime is apparent. The Court has a strong interest in deterring

violent crimes such as armed robbery.  Further, the sentence must protect the public from Murray and potential future violent crimes.

The Court also considers the issue of sentencing disparities and acknowledges that there is a disparate result if Murray were to commit the same crimes today and be charged and convicted today due to the First Step Act's amendment to 18 U.S.C. § 924(c).  However, this factor does not entitle Murray to release in consideration of the other § 3553(a) factors.  Murray was sentenced consistently, and leniently, with respect to the applicable Guidelines range at the time and similarly-situated defendants.  Reducing Murray's sentence due to a subsequent, nonretroactive change in law would cause a disparity in sentences imposed under the applicable prior Guidelines range, as Murray has only served a fraction of his sentence to date.

For these reasons, the Court concludes that the 18 U.S.C. § 3553(a) sentencing factors would not support a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

## IV.    CONCLUSION

For the reasons set forth herein, Murray's Motion for Compassionate Release, Addendum to Pro Se Motion for Compassionate Release, and Supplemental Brief in Support of Request for Compassionate Release (Docs. 162, 169, and 181) are **DENIED**.

**IT IS SO ORDERED.**

S/Susan J. Dlott
Judge Susan J. Dlott
United States District Court

10